# UNITED STATES *v.* DAVIS.

HABEAS CORPUS; CRIMINAL LAW; INFORMATION; POLICE COURT; COL-
LATERAL ATTACK.

1. The writ of *habeas corpus* cannot be made to perform the office of a writ of error, and where a party by such means seeks to be discharged from imprisonment under a judgment of conviction of a court of competent jurisdiction, he ·must clearly show that the judgment, for causes apparent upon its face, is an absolute nullity, as the question of errors or defects in the proceeding upon which the conviction is founded will not be entertained in a collateral proceeding by *habeas corpus.*
2. A judgment of conviction of the police court of this District based upon an information alleging that the defendant is charged upon the oath of a person named therein, is not a nullity, under the act of Congress of June 17, 1870, requiring the information to be under oath, although there is no separate affidavit made by the prosecuting witness or some other person possessing knowledge of the facts, and a defendant in custody under such a judgment is not entitled to be released upon *habeas corpus* proceedings; *following* Latney v. United States, *ante,* p. 265; Associate Justice SHEPARD *dissenting.*

No. 1056.   Submitted April 9, 1901.   Decided May 22, 1901.

HEARING on an appeal by the United States, from an order of the Supreme Court of the District of Columbia, in a *habeas corpus* proceeding, discharging the petitioner from custody of the warden of the jail.            *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. T. H. Anderson,* United States Attorney, for the District of Columbia, and *Mr. Ashley M. Gould,* Assistant United States Attorney, for the United States.

*Mr. A. S. Colyer* for the appellee filed no brief.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from the Supreme Court of the District of Columbia, in matter of *habeas corpus,* wherein the petitioner for the writ, the present appellee, was discharged, and the United States have appealed.

The petitioner for the writ alleged that he was arrested, tried, convicted, and sentenced to prison on November 1, 1900, by the police court of this District, for an assault, and that he was sentenced to jail for 11 months and 29 days. He alleged that he was illegally and unlawfully restrained of his liberty and held in jail by the warden thereof, by virtue of a commitment issued by the said police court. The only ground alleged as constituting illegality in the proceedings, is that the information upon which he was tried was not an information such as is required under section 1064 of the Revised Statutes of the District of Columbia, and was also in violation of the Fourth Amendment to the Constitution of the United States.

The proceeding in the police court is not exhibited as part of the petition, nor was there issued a writ of *certiorari* as ancillary to the writ of *habeas corpus* to have the record of conviction in the police court produced. But a copy of the information upon which the party was tried appears filed in the case; and we shall assume that it was properly filed.

The information filed in the police court, upon which trial and conviction were had, recites and states that the attorney of the United States for the District of Columbia " comes here into court, at the District aforesaid, on the 15th day of

October, 1900, and for the United States gives the court here-
to understand and be informed on the oath of one William
J. Quinlan, made on the 15th day of October, in the year
aforesaid, at, etc., before the said Alexander R. Mullowny,
one of the assistants to the said attorney of the United
States, that one Lewis Davis, on the 13th day of October,
1900, with force, etc., at said District, and within the juris-
diction of this court, in and upon William Young did make
an assault, and him the said Young then and there did beat,
wound," etc.

The writ of *habeas corpus* was issued as prayed, and in
the return thereto, the warden of the jail certified that Davis
was received by him and since held in prison by virtue of a
commitment by the judges of the police court, the said com-
mitment reciting the sentence of the said court of Davis to
imprisonment for the period of 364 days from said date, in
the jail of the District, and to which return was annexed a
copy of said commitment.

It was upon this return that the case was heard, and upon
the hearing the petitioner was discharged. And the sole
question in the case is, whether the police court had power
and jurisdiction to try, convict, and sentence the accused for
the crime of assault and battery? If such jurisdiction ex-
isted, and the judgment rendered was not in excess of the
jurisdiction, to an extent to render the judgment absolutely
void, clearly the petitioner was not entitled to be discharged
on writ of *habeas corpus.*

That the police court had full and complete jurisdiction
over the subject-matter of the crime charged against the ac-
cused, with power to try and convict therefor, on informa-
tion, can admit of no question. It is only necessary to refer
to the act of Congress of March 3, 1891, entitled "An act to
define the jurisdiction of the police court of the District of
Columbia;" and, by the second section of that act it is pro-
vided, "that prosecutions in the police court shall be on in-
formation by the proper prosecuting officer." It is equally
clear that the court had jurisdiction of the person of the ac-
cused, as he appeared in court, pleaded to the information,

and submitted to trial thereon, without showing or attempting to show, for aught that appears in this case, that he made any objection to the legality of the proceeding against him.

The question of the jurisdiction of the police court, and the binding effect of the judgment thereof, and the principle of presumption in support of such judgment, when sought to be attacked in a collateral proceeding, has been fully considered in the preceding case of *Julius Latney* v. *United States,* in an opinion delivered in that case. This case could well be rested on the principles stated in that case, and which are conclusive of everything involved in the present case. But as that case was not one of *habeas corpus,* but involved the question of the admissibility of the record of conviction of a first offense on the trial of a charge of a second offense of like character, we deem it proper to refer to some authorities, in addition to those referred to in that case, of special and direct application.

That a writ of *habeas corpus* cannot be made to perform the office of a writ of error, is a principle in regard to which all authorities agree in holding. When a party is in prison in execution of a judgment or sentence of a court of competent jurisdiction, he cannot be released on *habeas corpus,* unless he can clearly show, that the judgment, for causes apparent upon its face, is an absolute nullity. The question of errors or defects in the proceeding upon which the conviction is founded will not be entertained, in a collateral proceeding by *habeas corpus.* This doctrine is nowhere more clearly stated than by Chief Justice Marshall, in the leading case of *Ex parte Watkins,* 3 Pet. 193.

In that case, Watkins petitioned the Supreme Court of the United States for the writ of *habeas corpus* for the purpose of inquiring into the legality of his confinement in the jail of the District of Columbia, by virtue of a judgment of the circuit court of this District, rendered in a criminal prosecution instituted against him in that court. He alleged in his petition that the indictment under which he was convicted and sentenced to imprisonment charged no offense for which the prisoner was punishable in that court, or of

which that court could take cognizance; and, consequently, the proceedings were *coram non judice.* But the Supreme Court held that it was not shown that the judgment was a mere nullity, and that it had no power to examine the record and determine whether there were errors or defects in the indictment or not. The Chief Justice said:—"But with what propriety can this court look into the indictment? We have no power to examine the proceedings on writ of error, and it would seem strange if, under color of a writ to liberate an individual from unlawful imprisonment, we could substantially reverse a judgment which the law has placed beyond our control. An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous." And again the court said: "If the offense be punishable by law, that court is competent to inflict the punishment. The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have. To determine whether the offense charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties. The decision of this question is the exercise of jurisdiction, whether the judgment be for or against the prisoner. The judgment is equally binding in the one case and in the other; and must remain in full force unless reversed regularly by a superior court capable of reversing it. If the judgment be obligatory, no court can look behind it. If it be a nullity, the officer who obeys it is guilty of false imprisonment. Would," asked the Chief Justice, " the counsel for the prisoner attempt to maintain such position? "

The case of *Ex parte Lange,* 18 Wall. 163, was an application to the Supreme Court of the United States for the writ of *habeas corpus,* wherein the petitioner alleged that he was detained in prison by an illegal judgment of the Circuit Court of the United States. The writ was granted, and, upon the return, it was held by a majority of the court, against a strong dissent, that the judgment in the Circuit Court showed *upon its face and by its terms* that it was an

utter nullity, and consequently the party was entitled to his discharge.

In the recent case of the *United States* v. *Pridgeon,* 153 U. S. 48, the application was for a writ of *habeas corpus,* founded upon a wrong description in the indictment of the territorial jurisdiction of the court that tried and convicted the party. The indictment was found in the district court of the United States within and for Logan County in Oklahoma Territory, and for the Indian country attached thereto, charging the offense of horse stealing, and laying the venue of the offense, " at and within that part of the Territory of Oklahoma attached for judicial purposes to Logan County," with a description of territory which included part of Oklahoma and part of the Cherokee Outlet not in Oklahoma, and which averred the same to be " then and there Indian country, and a place then and there under the sole and exclusive jurisdiction of the United States." The party was arraigned, pleaded, tried, and convicted on this indictment, and was sentenced to the penitentiary. In his petition for the writ of *habeas corpus* it was alleged that the party was wrongfully restrained of his liberty, because the court that tried and convicted him had no jurisdiction in the premises, and that its judgment was void. The writ of *habeas corpus* was issued, and, upon hearing, the party, as in the present case, was discharged; but that ruling was by the Supreme Court of the United States adjudged to be erroneous. That court, by a unanimous opinion, held that the indictment was not so radically defective, when attacked collaterally by writ of *habeas corpus,* as to justify the court in holding that the district court had no jurisdiction over the person and the offense tried, and consequently the party was not entitled to be discharged. It was there said by the court, that under a writ of *habeas corpus* the inquiry is not addressed to errors, but to the question whether the proceedings and judgment are nullities; and unless it appear that the judgment or sentence under which the prisoner is confined is void, he is not entitled to his discharge.

In the opinion of the court, delivered by Mr. Justice

Jackson, it is said: "If the indictment does not fairly and sufficiently aver that the offense in question was committed in the Cherokee Outlet, it certainly does not show affirmatively upon its face that it was committed elsewhere, and without the jurisdiction of the court. It may be that upon demurrer or writ of error, the indictment might have been found defective in not alleging with greater certainty the particular locality in which the offense was committed, within the rule laid down in *McBride* v. *The State,* 10 Humph. 615, but it cannot be properly held that the indictment is so fatally defective on its face as to be open to collateral attack after trial and conviction, or that the sentence of the court pronounced thereon was void. The *habeas corpus* proceeding being a collateral attack of a civil nature, *it must clearly and affirmatively appear that the indictment charged an offense of which the court had no jurisdiction, so that its sentence was void.* This does not appear in the present case, and the second question certified must, therefore, be answered in the negative."

The principles of the cases to which we have referred are laid down in numerous cases, both State and Federal, but we deem it unnecessary to refer to others than those to which we have called attention. These latter would seem to be entirely conclusive of the present case. As we have seen, the ground of objection to the information here is, that it is not alleged that there was a separate and independent affidavit made by the prosecuting witness or some other person possessing knowledge of the facts, upon which the information should be founded. But, if it be conceded that the provision of the act of Congress of 1870, requiring the information to be upon oath, was not repealed by the subsequent act of Congress of March 3, 1891, the allegation in the present information would seem to be all that was necessary to gratify the terms of the statute — certainly after trial and conviction, and upon collateral attack. The allegation in the information is that the party is charged "upon the oath of one William J. Quinlan, made on the 15th day of October, in the year 1900, before one of the assistants to the district attorney of the United States." No greater certainty than

this could be required in proceeding on *habeas corpus* after conviction.

We are clearly of opinion that there was jurisdiction in the court to try and convict the accused, and that there is nothing apparent to show that the conviction and sentence were nullities. We must, therefore, reverse the order of the court below discharging the petitioner, and remand the cause; and it is so ordered.                    *Order reversed.*

Mr. Justice SHEPARD dissented.