## MEOTERIS v. UNITED STATES.
### No. 6796.

Circuit Court of Appeals, Seventh Circuit.
Nov. 30, 1939.

Ira I. Silbar, of Chicago, Ill., for appellant.

William J. Campbell, U. S. Atty., of Chicago, Ill., and Julius C. Martin, Director, Bureau of War Risk Litigation, Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Keith L. Seegmiller, Atty., Department of Justice, all of Washington, D. C., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment in favor of the defendant, based upon the verdict of a jury directed by the court at the conclusion of the plaintiff's case. Plaintiff assigns as error the action of the court in directing a verdict and argues that there was substantial evidence which required the submission of the case to a jury. Defendant raises a question of jurisdiction.

The suit was brought to recover total permanent disability benefits under a contract of War Risk Term Insurance in the sum of $10,000, effective June 9, 1918, and which lapsed for non-payment of premium August 31, 1919, unless the plaintiff became permanently and totally disabled on or prior thereto.

Plaintiff enlisted in the United States Army on June 5, 1918, and was discharged on July 22, 1919. The claim sued on was filed in the Veterans' Administration by plaintiff himself on July 3, 1931, and plaintiff was notified of final denial thereof January 14, 1933. The suit was instituted on December 31, 1935. The answer joined issue on the alleged occurrences of total permanent disability during the life of the policy, and prayed dismissal of the suit for lack of jurisdiction on the ground that it had not been brought within the time permitted by law. It appears the court below made no express finding upon the jurisdictional question, but we assume the court was of the opinion it had jurisdiction, otherwise there would have been no occasion for it to have directed a verdict for want of substantial evidence.

Plaintiff offered and relies upon the testimony of lay witnesses as to his physical and mental condition both prior and subsequent to the time of his discharge from military service. This testimony is to the effect that plaintiff, at the time of his entry into the service, was in good health and that he was an active participant in athletics. While in Russia, he fell into the icy waters of a river and was sent to a convalescent camp; that his attitude and condition thereafter changed, and instead of being good natured and full of vitality, he, as described by one witness "crawled into his shell" and would go around with his head down and avoided meeting people. Prior to his entry into the service, plaintiff was a barber by trade and rendered satisfactory services as such. There is also testimony to the effect that after his return from the war, his services as a barber were unsatisfactory; that he appeared to be nervous and depressed, and would participate in arguments with customers to the extent that his services were no longer desirable. There is also testimony that he would get excited, laugh and cry without apparent reason, and that it took him twice as long to do a job as formerly. Plaintiff offered in evidence certain exhibits produced from the Government's records, summarized in plaintiff's brief as follows:

February 17, 1922—(Dr. A. E. La Bine) Diagnosis: Psycho-nervous hysteria.

June 30, 1923—(Dr. J. G. Carr) Diagnosis: Hysteria traumatic.

December 23, 1926—(Examiner F. C. Walsh) General diagnosis: Dementia praecox, simple type, with marked social inadjustment.

February 26, 1931—(Dr. F. J. Griffin) Diagnosis: Constitutional psychopathic inferiority.

December 11, 1931—(Drs. M. Koenig, E. F. Bogan and E. A. Gunderson) Diagnosis: Constitutional psychopathic inferiority.

June 21, 1932—(Dr. J. J. Thompson) Diagnosis: Constitutional psychopathic inferiority, non-service connected, could not be established from my examination.

August 12, 1932—(Dr. J. J. Thompson) Summary:—From the complaints and reaction of the patient during the examination, which are evidently of a neurotic hysterical type, the following diagnosis is offered:

Psychoneurosis, hysteria, moderate. There is no hospitalization or treatment indicated for the same at present.

Plaintiff was adjudicated as insane by the Probate Court of Wayne County, Michigan,

on May 13, 1929, and was committed to a State Hospital. We find nothing in the record which discloses when or under what circumstances he was discharged from this hospital, but it is apparent that his confinement was of brief duration. On the trial, Dr. Seabright testified as to an examination made of the plaintiff by him about 1932, and again shortly prior to the trial. He made a diagnosis of psychasthenia, "a term which describes a general condition of an unstable person as to their nervous reactions." In the opinion of this witness, the condition then found was probably permanent. No medical testimony was offered as to the degree of disability resulting from any of the diagnosed conditions, and, in fact, no testimony that plaintiff consulted a physician prior to 1932.

Plaintiff and defendant each cite many cases in support of their respective contentions with reference to the action of the Trial Court in directing a verdict. It would serve no useful purpose for us to undertake to analyze and distinguish the authorities thus relied upon. An examination of them is convincing that cases of this character must be determined largely from the facts in each case, and decisions in other cases furnish very little, if any, assistance.

The Trial Court, in directing a verdict for the defendant, stated:

"* * * if a verdict should be returned for the plaintiff in this case, it would be the duty of the Court to set aside the verdict because, whether or not the plaintiff became permanently and totally disabled on or before August 31, 1919, so far as any evidence has been produced here, it would be a case of conjecture or speculation on the part of both the Court and the jury."

We have read the testimony and we think this statement of the court is correct. In other words, there was no substantial evidence of plaintiff's permanent and total disability which would cause the policy to mature at the time alleged.

True, there is evidence to the effect that plaintiff's physical and mental condition, subsequent to his discharge, was in marked contrast to his condition prior thereto. This, in connection with subsequent developments might tend to prove a permanent condition at the time of his discharge, but to say that he was totally disabled would be a matter solely of speculation. Even the doctor who testified at the trial expressed no opinion as to whether or not his disability was total. It will be noted the first exhibit from the Government's records, referring to plaintiff's condition, is dated February 17, 1922. The diagnosis was "psycho-nervous hysteria." On June 30, 1923, the diagnosis was "hysteria traumatic." As stated, there was no medical testimony as to the significance to be attached to the terms thus employed, and in the absence of such testimony, we do not think it can be said that, even when considered with the lay testimony, total disability was proven by substantial evidence. The diagnosis of December 23, 1926, as "dementia praecox, simple type" together with the adjudication of insanity in May, 1939, indicates, as shown by the testimony of lay witnesses, that the disability was permanent at the time of discharge, but not that it was total as of that date.

■ Complaint also is made of the exclusion of certain testimony offered by lay witnesses, having to do with plaintiff's physical and mental condition. An examination of the refused testimony discloses that it was of a nature similar to that which was admitted. While we think some of the refused testimony might properly have been admitted, yet it was largely cumulative in character, and if it had all been admitted, we still are of the opinion that plaintiff's case would not have been proven by substantial evidence. In view of this situation, any error in this respect would not justify a reversal.

■ As to the jurisdictional question presented by defendant, we are of the opinion that the court had jurisdiction. Under the circumstances, no useful purpose could be served in entering into a detailed discussion with reference to this question. Briefly, defendant relies upon Section 19 of the World War Veterans' Act, 38 U.S.C. §§ 445–445d, 38 U.S.C.A. §§ 445–445d, as amended by the Act of June 29, 1936, as barring plaintiff's right of action. There seems to be no doubt but that January 14, 1933 was the last date on which suit could have been filed, and that plaintiff's right in this respect was barred unless saved by that clause of the statute in favor of persons under legal disability.[1] As stated, plaintiff

---

[1] "* * * Infants, insane persons, or persons under other legal disability, or persons rated as incompetent or insane by the Veterans' Administration shall have three years in which to bring suit after the removal of their disabilities. * * *"

was adjudicated as an insane person in May, 1929. The general rule seems to be that a person adjudged to be insane is presumed to so continue until it is shown that sanity has returned. 7 A.L.R. 588; In re Kehler, 2 Cir., 159 F. 55, 57. It would seem to follow that the burden was upon the defendant to overcome such presumption, and as to whether or not it succeeded in this respect was a question of fact. Inasmuch, however, as the court held, and properly so as we conclude, that a verdict should be directed upon the merits, there was no occasion to submit the jurisdictional question.

The judgment of the District Court is affirmed.