**Ex parte ROSIER.**

No. 7920.

United States Court of Appeals for the District of Columbia.

Decided Sept. 2, 1942.

Mr. Leonard J. Ganse, of Washington, D. C., for appellant.

Messrs. Dennis McCarthy and Charles B. Murray, Assistant United States Attorneys, with whom Mr. Edward M. Curran, United States Attorney, all of Washington, D. C., was on the brief, for appellee. Mr. Bernard Margolius, Assistant United States Attorney, of Washington, .D. C., also entered an appearance for appellee.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from an order of ·the District Court of the United States for the District of Columbia denying the appellant, Dennis W. Rosier, leave to file a petition for a writ of habeas corpus without prepayment of costs and denying the petition for the writ. The District Court also denied the appellant leave to file a notice of appeal without prepayment of costs, but upon the appellant's application to this court for relief we directed the clerk of the District Court to file the notice of appeal and to transmit the record without prepayment of costs. The appellant's petition questions the right of Dr. Winfred Overholser as Superintendent of St. Elizabeths Hospital to continue to confine him in that institution. The case involves important questions in respect of the duty of the District Court in habeas corpus proceedings in forma pauperis.

The facts are as follows: On September 30, 1937, the appellant was sentenced to the penitentiary upon a charge of assault with a dangerous weapon for a term of ·from two to three years. On January 31, 1940, during his confinement under that sentence, a petition for inquiry into his mental health was filed in his behalf in the District Court and after a hearing held on February 7, 1940, a jury returned a verdict that he was of unsound mind. As a result of this a judgment committing the appellant to St. Elizabeths Hospital was entered. The appellant has since been confined in that institution. On July 1, 1940, a writ of habeas corpus was issued by the District Court on application of the appellant and a hearing was held in respect of his mental health. On the same day that writ was discharged and the appellant remanded to custody in St. Elizabeths. The

term for which the appellant was sentenced to the penitentiary expired October 14, 1940. On October 15, the appellant signed and swore to a petition for a writ of habeas corpus in the following terms:

"Your petitioner Dennis W. Rosier represents and states to this honorable court that he is restrained of his liberty and is unlawfully imprisoned at St. Elizabeths Hospital, Washington, D. C., by the superintendent of said institution.

"That cause of said restraint according to the best of the knowledge and belief of your petitioner is—Alleged Mental Incompetency—but that said restraint is unconstitutional, and he is entitled to legal enlargement.

"Your relator states that he was not properly adjudicated.

"Your petitioner further states that he is of sound mind as he knows right from wrong and has no delusions or hallucinations.

"Furthermore your petitioner's sentence expired upon October 14, 1940, as per records in his possession.

"Your petitioner avers that he is neither a citizen nor a resident of the District of Columbia, but is a citizen of Duval County, Florida, and as such should be returned thereto if further treatment is deemed necessary by this honorable court.

"Wherefore your petitioner prays this honorable court to grant a Writ of habeas corpus, and that he be discharged without delay from such unconstitutional incarceration after proper hearing in said court."

To this petition was annexed an affidavit for leave to proceed in forma pauperis wherein the appellant took oath that he was a citizen of the United States, plaintiff in the habeas corpus action and entitled to commence and maintain the same in the District Court; that because of his poverty, he was unable to pay costs in the action or to give security for the same; that he believed he was entitled to the redress he sought by such action; that the nature of the action was correctly and concisely set out in the petition for the writ. The petition and affidavit were forwarded to the District Court by Dr. Overholser with a letter signed by him reading as follows:

"Enclosed herewith is a holographic petition for writ of habeas corpus signed by one of our patients, Dennis W. Rosier.

"You may recall that this case came before you on a writ of habeas corpus, No. 2087, on July 1, 1940. At that time you dismissed the petition, quashed the writ and remanded the petitioner to the custody of the hospital. His present petition is couched in practically the same terms as his former one and was, in fact, prepared for him by another patient who has a habit of stimulating this sort of legal action among his fellow-patients. Dennis Rosier has shown no change since his previous appearance in court. His sentence expired October 14, 1940, but as he had been duly adjudged of unsound mind in this jurisdiction and had not recovered from his mental disorder, he was, of course, not discharged from the hospital. At present we are endeavoring to get him transferred to his native state, Florida, but do not know whether or not we will be successful.

"We have, of course, no desire to make any suggestions as to the action of your court, but we thought you would like to know these particulars when passing upon his petition."

Upon receipt of the petition and affidavit and the letter of Dr. Overholser the clerk of the District Court made a memorandum of the docket entries in previous proceedings involving the appellant to which reference has been made above and transmitted the same together with the petition, affidavit and letter, to one of the judges of the court. On October 28, 1940, the court entered an order phrased as follows: "Let the petition to file without prepayment of costs and the petition for a writ of habeas corpus be *denied . . .*" What reason the court had for so disposing of the petition was not made to appear until November 18, 1940, when a memorandum opinion was filed which we set out below. On October 30, the clerk wrote the appellant a letter stating that his petition for a writ of habeas corpus had been received and submitted to the court, but that "Upon consideration thereof, the Court has denied the issuance of the writ." On November 3, the appellant wrote an assistant clerk of the District Court, acknowledged receipt of the letter of October 30th, and asked that there be sent him a written reason for the denial of the writ, and asked also that the clerk be requested "to Send me a Copy of the respondents reply to my petition of 6–1–40 As he failed to give it

to me while at Motions Court, July 1st, 1940. I also request a full copy of what's my charges and records Summaries as I'm perfectly ignorant of what its all about." On November 8, the clerk responded in writing advising the appellant "that in denying the issuance of a writ of habeas corpus on October 28, 1940, the Court did not file reasons therefor." On November 15, within the time fixed by then Rule 10 of this court for perfecting appeals, the appellant sent to the clerk of the District Court a notice of appeal, in due form, from the order denying the petition for a writ. Annexed to the notice was an affidavit in forma pauperis in substantially the same terms as the one accompanying the petition for the writ. To the notice and affidavit the appellant appended a letter to the clerk in which he again appealed for a copy "of the respondents reply to my petition of June 1940," and again inquired why his petition had been denied; he also stated that he was still detained in "a prison penal ward" after having served his maximum sentence, that he had given no trouble except in persistently requesting release, that he was not sick or demented, that he was not receiving, and had not received, medical treatments at St. Elizabeths, and that he

accordingly felt entitled to transfer to an outside ward. He concluded by asking the clerk to insist on these "points of logic" if the doctors "feel as though I'm mentally or physically unfit for public welfare." The letter was informally phrased and obviously written by an uneducated person, but its appeal for reasons why the petition for a writ had been denied, and for deliverance at least from a prison ward is clear.[1] An additional letter appealing to "Hon. Judges and Jurists" stating that there were none who could secure counsel for him, and that his people were in poverty stricken areas in Florida and could not come to see him, was written by the appellant upon the back of the affidavit in forma pauperis.[2] The notice of appeal, the affidavit in forma pauperis and the letters of the appellant were by the clerk brought to the attention of one of the trial judges, together with a memorandum of docket entries dated November 15, in which the clerk asked, "Has the clerk any authority to file this notice of appeal and make the record for him [the appellant] without collecting money due the United States? Also has the clerk a right to file petition, the filing of which was denied without prepayment of costs?" We print the memo-

---

[1] The letter was in terms as follows:

"Dennis W. Rosier's own written requests hereforth.

"Hon. Mr. Stewart.

"please Send me a copy of the respondents reply to my petition of June. 1940. As it was'nt given me at Motions Court. July 1st. 1940.

"Obliging D. W. R."

"Mr. Stewart please inform me as for what cause was my petition denied. Knowing that I'm still detained in a prison penal ward, after having served my maximum Sentence. Hon. Sir I've never gave one minute's trouble to anyone since being here except persistantly requesting my release which I feel duly entitled to. As I'm not sick nor demented as to my knowledge. Nor am I receiving any medical treatments nor have I previously received any while having ben confined here at st. Elizabeths Howard's Hall. Therefore I feel duly entitled to a transfer to an outside ward. If the Doctors feel as though I'm mentally or physically unfit for public welfare.

"please Sir insist on those points of logic as my personal 'endeavors are nullified. as to my own knowledge. except

with the support of some good Humanitarian.

"Praying your most loyal concideration and support.

"Sincerely obliging

(s) "Dennis W. Rosier"

[2] This letter was in the following terms:

"Hon. Judges and Jurists. As stated afore. I truthfully declares that I have none concerned of me, whom are able to Secure Council for me, or even produce transportation to Visit me. practically all of my people are in Florida in poverty stricken areas. Therefore I'm compelled to beg the support of my superior, if I wants it, or expects to get it. And if I was in sincere doubt of your support, I would in no wise trouble myself any more nor you all.

"But as I have faith in Both Man and God. I strives to please both and hopes for the best I can get, regardless of what it is.

"Hon. sir I myself am a man, yet of low standard. I still, and ever will maintain that which is Sacred and live up to my vows.

"Sincerely & Obliging

(s) "D. W. Rosier"

randum in full in the margin.[3] On November 18 the trial court filed a memorandum opinion in words as follows:

"There is today presented to me a communication dated November 1, 1940, from Dennis W. Rosier, a patient at St. Elizabeth's Hospital, addressed to the Clerk of this Court, by which notice is given to the Clerk of the intention of the writer of the communication to appeal to the United States Court of Appeals for the District of Columbia, from what he states is the judgment of this Court in denying a petition for writ of Habeas Corpus 'signed and filed October 15, 1940.' Since an affidavit is filed stating the said Rosier, because of poverty, is unable to pay costs, I think I should treat the paper as an application to this Court to permit the notice of appeal to be filed in forma pauperis.

"I find that a petition for writ of Habeas Corpus made by the said Dennis W. Rosier under date of October 15, 1940, was sought to be filed in forma pauperis and was by me denied on October 28, 1940. I further find that on September 30, 1937, petitioner was sentenced to the penitentiary upon a charge of assault with a dangerous weapon, for a term of from two to three years; that on January 31, 1940, a petition for inquiry into the petitioner's state of mind was filed, and upon hearing, held on February 7, 1940, a jury returned a verdict of unsound mind, as a result of which a judgment committing petitioner to St. Elizabeth's Hospital was entered; that thereafter, on July 1, 1940, in Habeas Corpus Cause No. 2087, in this Court, after a hearing had been held upon a writ of Habeas Corpus issued in said cause, the writ was discharged. I further find that the so-called petition, dated October 15, 1940, was prepared by a fellow patient who has prepared a number of similar petitions for other patients, and that substantially the same allegations were made in the paper dated October 15, 1940, as were made in the petition filed in Habeas Corpus Cause No. 2087. I further find from information given by the Superintendent of St. Elizabeth's Hospital, that there has been no change in the condition of petitioner since the hearing by this Court in July, 1940. Under these circumstances, I find that it is not reasonably likely petitioner will be granted the relief sought by appeal, that the action is not meritorious and that, accordingly, he should not be permitted to file his notation of appeal in forma pauperis (28 U.S.C.A. 832, Note 41).

"For the same reasons hereinbefore outlined, I did not permit the so-called petition for writ of Habeas Corpus dated October 15, 1940, to be filed, and these findings accordingly are made to apply to said so-called petition.

"As a matter of law, I find that the relief sought by petitioner is not by way of notation of an appeal from the refusal of this Court to permit the filing of the petition in forma pauperis, but if it may be granted, it should be upon application to the United States Court of Appeals in the District of Columbia, for an order to compel such filing."

On November 26, 1940, the clerk wrote the appellant that his right to appeal in forma pauperis had been denied, and enclosed for his information a copy of the memorandum opinion.[4] On January 6,

---

[3]    "November 15, 1940.
"Memorandum for the Motions Justice:
        "In re: Petition of Dennis W. Rosier
        "For Writ of Habeas Corpus.
    "1940  Oct. 28  Order signed by Justice Laws denying right to file petition for habeas corpus and denying issuance of writ. (as a pauper)
    "1940  Nov. 15  Notice of appeal by Rosier from above referred to order, accompanied by an affidavit of poverty.

"The petitioner was denied the right to file in forma pauperis, and therefore the petitioner will have to pay the clerk's fee of $5.00 for filing notice of appeal and

for costs of making record on appeal. It would also seem that he should pay the $10.00 filing fee for placing the petition of record, in order that it may be certified to the Appellate Court.

"Has the clerk any authority to file this notice of appeal and make the record for him without collecting money due the United States? Also has the clerk a right to file petition, the filing of which was denied without prepayment of costs?"

[4] The clerk's letter of November 26 was in the following terms: "I enclose herein for your information copy of an opinion of the Court in connection with your attempt to appeal to the Court of Appeals from decision of this Court denying the filing of a petition for habeas

1941, the appellant made application to this court for relief, and on April 9 following, this court directed the clerk of the District Court to file the notice of appeal *nunc pro tunc* and to transmit the record without requiring the appellant to prepay fees or costs.[5] To insure protection of the appellant's rights and the adequate presentation of the appeal at the bar of this court we appointed Mr. Leonard J. Ganse of the District of Columbia bar to represent the appellant.

It is to be noted that the trial court made no ruling that the affidavits in forma pauperis which were filed by the appellant, one in connection with his petition for a writ and the other in connection with his application for an appeal, were either insufficient in form or untrue. The Government raises no question here concerning either the sufficiency in form or the truth of these affidavits.[5a] It is to be noted further that there was nothing on the face of the application to proceed in forma pauperis indicating that it was frivolously or vexatiously filed. And the Government does not contend that there was.

The action of the trial court in refusing to permit the appellant to file his petition for a writ, in denying it without according the appellant an opportunity to be heard in respect of its sufficiency and in respect of the prior adjudications and the representations of Dr. Overholser, and in omit-

ting to appoint counsel, is assigned as error.

## I

The statutes of the United States declare that the Supreme Court and the district courts shall have power to issue writs of habeas corpus;[6] that application for the writ shall be made to the court or justice or judge authorized to issue the same by complaint in writing, under oath, signed by the petitioner, setting forth the facts concerning his detention, in whose custody he is and by virtue of what claim or authority, if known.[7] The court or justice or judge "shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto." The writ shall be directed to the person in whose custody the petitioner is detained.[8] The person to whom the writ is directed must certify to the court or judge the true cause of detention and, at the same time he makes his return, bring the body of the party before the judge who granted the writ.[9] When the writ is returned a day is to be set for the hearing, not exceeding five days thereafter, unless the petitioner requests a longer time.[10] The petitioner may deny the facts set forth in the return or may allege any other material facts, under oath.[11] The court or judge "shall proceed in a summary way to determine the facts of the case, by hearing the testimony and

corpus without prepayment of costs and the issuance of a writ.

"The Court has denied you the right to appeal in forma pauperis."

[5] The order of this court was in the following terms: "On consideration of petition for order to compel the District Court to file notice of appeal *in forma pauperis*, and the Clerk of the district court having furnished to this court for inspection the file in this cause, it is ORDERED by the court that the Clerk of the district court be, and he is hereby, authorized and directed to file *nunc pro tunc* the notice of appeal in this case tendered to him on November 1, 1940, and to transmit to this court the record on appeal, without requiring petitioner to prepay fees or costs."

The reference of the clerk to November 1, 1940, is erroneous. The appellant's application for appeal was dated November 1, but was received by the clerk of the District Court November 15, 1940.

[5a] Since no writ was issued by the trial

court to Dr. Overholser, and since no order to show cause why a writ should not issue was directed to him, there was technically no party defendant before the court below and there is technically therefore no appellee here. The appearance of the United States Attorney here, although in terms for "the appellee," was in fact for the Superintendent of St. Elizabeths Hospital, a Government institution. Therefore in this opinion we shall refer to the Government as the party opposed to the appellant.

[6] Rev.Stat. § 751 (1875), 28 U.S.C.A. § 451.

[7] Rev.Stat. § 754 (1875), 28 U.S.C.A. § 454.

[8] Rev.Stat. § 755 (1875), 28 U.S.C.A. § 455.

[9] Rev.Stat. § 757 (1875), 28 U.S.C.A. § 457; Rev.Stat. § 758 (1875), 28 U.S.C.A. § 458.

[10] Rev.Stat. § 759 (1875), 28 U.S.C.A. § 459.

[11] Rev.Stat. § 760 (1875), 28 U.S.C.A. § 460.

arguments, and thereupon to dispose of the party as law and justice require."[12]

In Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, the duties of trial courts under these statutory provisions are carefully discussed and defined. In that case a conviction and sentence upon a plea of guilty in the United States District Court for Northern Texas was attacked in a habeas corpus proceeding in the United States District Court for Northern California upon allegations to the effect that the petitioner therein was without the assistance of counsel in the criminal case, that he did not waive the right to counsel, that the criminal court did not inquire whether he desired counsel or instruct him that he was entitled to counsel, and that he did not know he was entitled to counsel if he had no money to pay counsel himself; there were allegations also to the effect that the petitioner's plea of guilty had been entered as a result of deception, fraud and coercion on the part of the District Attorney. The officer against whom the writ was sought filed a return showing that he held the petitioner under a commitment issued by the criminal court; attached to the return, in addition to copies of the indictment, sentence, commitment and the like, were affidavits to the effect that on the day of the trial the petitioner informed the District Attorney that he was guilty and was going to plead guilty, and that, when asked whether he had a lawyer, he stated that he did not want one, and to the effect that the petitioner had told the judge of the criminal court in open court that he had no counsel and did not desire any, as he was guilty and intended to plead guilty. The petitioner filed a traverse in which, in addition to denying the assertions of the affidavits, he alleged facts which, if true, would have supported a conclusion that he was deceived and coerced into pleading guilty. The District Court proceeded to adjudicate the petitioner's right to the writ upon the allegations of his petition and traverse and those of the return and accompanying ex parte affidavits, without the taking of testimony, and refused to issue the writ. The case presented three questions: First:

Was the District Court to which the petition for habeas corpus was addressed bound, on the filing of the petition, forthwith to issue the writ and have the petitioner produced in answer to it? Second: If the procedure followed by the District Court was permissible, and the pleadings raised issues of fact, should those issues have been resolved by testimony rather than upon affidavits? Third: Did the pleadings raise any material issue of fact? The question for ultimate determination in that case was of course whether or not the appellant had been denied his constitutional right to the assistance of counsel in a criminal proceeding, whereas the question for ultimate determination in the instant case is whether or not the appellant is being denied his constitutional right of personal liberty by being confined in St. Elizabeths Hospital after restoration of sanity. But the principles announced by the Court and its definition of the duties of trial courts in habeas corpus proceedings are pertinent here.

Walker v. Johnston establishes two essential propositions: (1) When a petition for a writ of habeas corpus is presented to a court or judge, unless it appears *from the petition itself* that the petitioner is not entitled thereto, either the writ must forthwith issue—with consequent duty upon the person to whom it is directed to certify to the court or judge the true cause of the petitioner's detention and at the same time that he makes this return to bring the body of the petitioner before the judge who granted the writ—or a rule to show cause why the writ should not be granted must forthwith issue, and this even if the allegations of the petition are upon their face "improbable and unbelievable." The petition must be examined as if on demurrer, the truth of the allegations being assumed. A petitioner cannot be denied the opportunity to prove the truth of the allegations he makes if those allegations, if true, entitle him as a matter of law to release from restraint. (2) No controverted issue of fact arising under a petition for a writ of habeas corpus return and traverse can be determined except after a hearing *ore tenus* or upon depositions.[13]

---

[12] Rev.Stat. § 761 (1875), 28 U.S.C.A. § 461.

This resume of the provisions of the United States statutes relating to habeas corpus proceedings is taken from Walker v. Johnston, 312 U.S. at pages 283, 284, 61 S.Ct. 574, 85 L.Ed. 830.

[13] That these two propositions are established by the decision is made clear by consideration of the questions presented, the terms of the opinion and the ruling. The opinion commences its answer to the questions presented by setting

This determination by the Supreme Court of the duties of trial courts and judges in habeas corpus cases is obviously in consonance with the nature of the writ historically and under our jurisprudence and with the due process clause of the Fifth Amend-

forth a resume of the provisions of the statutes relating to writs of habeas corpus including (and this the Court quoted verbatim) the provisions that the court or justice or judge to whom an application for a writ is made "shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto." The Court then went on to say:

"It will be observed that if, upon the face of the petition, it appears that the party is not entitled to the writ, the court may refuse to issue it. Since the allegations of such petitions are often inconclusive, the practice has grown up of issuing an order to show cause, which the respondent may answer. By this procedure the facts on which the opposing parties rely may be exhibited, and the court may find that no issue of fact is involved. In this way useless grant of the writ with consequent production of the prisoner and of witnesses may be avoided where from undisputed facts or from incontrovertible facts, such as those recited in a court record, it appears, as matter of law, no cause for granting the writ exists. On the other hand, on the facts admitted, it may appear that, as matter of law, the prisoner is entitled to the writ and to a discharge. This practice has long been followed by this court and by the lower courts. It is a convenient one, deprives the petitioner of no substantial right, if the petition and traverse are treated, as we think they should be, as together constituting the application for the writ, and the return to the rule as setting up the facts thought to warrant its denial, and if issues of fact emerging from the pleadings are tried as required by the statute." (312 U.S. at page 284, 61 S.Ct. at page 578, 85 L.Ed. 830). This constituted the Court's answer to the first question presented in the case (Was the District Court, on the filing of the petition, bound forthwith to issue the writ and have the petitioner produced in answer to it?)

In answering the second question (If the procedure followed by the District Court was permissible, and the pleadings raised issues of fact, should those issues have been resolved by testimony rather than upon affidavits?), the Court said:

"The District Court proceeded to adjudicate the petitioner's right to the writ upon the allegations of his petition and traverse and those of the return and accompanying affidavits. Thus the case was disposed of on *ex parte* affidavits and without the taking of testimony. The practice thus to dispose of applications for *habeas corpus* on matters of fact as well as of law has been followed in the Ninth and Tenth Circuits.

"In other circuits, if an issue of fact is presented, the practice appears to have been to issue the writ, have the petitioner produced, and hold a hearing at which evidence is received. *This is, we think, the only admissible procedure. Nothing less will satisfy the command of the statute that the judge shall proceed 'to determine the facts of the case, by hearing the testimony and arguments.'* It is not a question what the ancient practice was at common law or what the practice was prior to 1867 when the statute from which R.S. 761 is derived was adopted by Congress. The question is what the statute requires. [Italics supplied]

"As we said in Johnson v. Zerbst, 304 U.S. 458, 466, 58 S.Ct. 1019, 82 L.Ed. 1461, 'Congress has expanded the rights of a petitioner for *habeas corpus* . . . "There being no doubt of the authority of the Congress to thus liberalize the common law procedure on *habeas corpus* . . . it results that under the sections cited a prisoner in custody . . . may have a judicial inquiry . . . into the very truth and substance of the causes of his detention," . . .' Such a judicial inquiry involves the reception of testimony, as the language of the statute shows.

"The Government properly concedes that if the petition, the return, and the traverse raise substantial issues of fact it is the petitioner's right to have those issues heard and determined in the manner the statute prescribes." (312 U.S. at pages 285, 286, 61 S.Ct. at page 578, 85 L.Ed. 830)

Then followed the answer to the third question in the case (Did the pleadings raise any material issue of fact?). The pleadings in that case being different from those in this one, the decision of the Court on that subject is not important here. But the statement which it made in reaching the decision is in part pertinent. The Court said:

". . . On a hearing he [the petitioner] would have the burden of sustaining his allegations by a preponderance of evidence. It is true that they are denied in the affidavits filed with the return to the rule, but the denials only serve to make the issues which must be resolved by evidence taken in the usual way. They can have no other office. The wit-

ment to the Constitution. The writ of *habeas corpus ad subjiciendum* has for centuries been esteemed the best and only sufficient defense of personal freedom. It was first recognized in statutory form in England in the Habeas Corpus Act of 31 Car. II (1679) passed "for the better securing of the liberty of the subject." This statute, Blackstone said, "is frequently considered as another Magna Charta." The writ had been recognized at the common law for a long period prior to the Habeas Corpus Act. The writ was recognized in Article I, Section 9, clause 2 of the Constitution in the words "The Privilege of the Writ of Habeas Corpus shall not be suspended unless in Cases of Rebellion or Invasion the public Safety may require it." "It stands then under the constitution of the United States, as it was under the common law of English America, an indefeasible privilege, above the sphere of ordinary legislation. . . ." United States v. Williamson, D.C.E.D.Pa.1855, 28 Fed. Cas. pages 686, 688, No. 16,726.[14] The Judiciary Act of September 24, 1789, empowered United States courts "to issue writs of . . . *habeas corpus*" and in terms also gave to "the justices of the supreme court, as well as judges of the district courts . . . power to grant writs of *habeas corpus* for the purpose of an inquiry into the cause of commitment."[15] That the writ of habeas corpus referred to in Section 14 was the writ of *habeas corpus ad subjiciendum* was recognized in Ex parte Bollman, 1805, 4 Cranch 75, 2 L.Ed. 554. Under the common law and the Habeas Corpus Act of 1679 and other acts of Parliament prior to that of July 1, 1816 (56 Geo. III, ch. 100, § 3) the rule was that a showing in a return to a writ of habeas corpus that the prisoner was held under final process based upon a judgment or decree of a court of competent jurisdiction closed the inquiry, no traverse of the truth of the return being permitted. Moreover one of the paramount objectives

---

nesses who made them must be subjected to examination *ore tenus* or by deposition as are all other witnesses. Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. *The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. On this record it is his right to be heard."* (312 U.S. at pages 286, 287, 61 S.Ct. at page 579, 85 L. Ed. 830) (Italics supplied)

The Court then ruled that there must be reversal and the cause remanded to the District Court for proceedings in conformity with the opinion, *i. e.*, for a hearing either *ore tenus* or by depositions.

[14] "When the federal convention was engaged in framing a constitution for the United States, a proposition was submitted to it by one of the members, that 'the privileges and benefits of the writ of habeas corpus shall be enjoyed in this government in the most expeditious and ample manner; and shall not be suspended by the legislature except upon the most urgent and pressing occasions.' See the Madison Papers (vol. 3, p. 1365). The committee to whom this was referred for consideration, would seem to have regarded the privilege in question as too definitely implied in the idea of free government to need any formal assertion or confirmation; for they struck out that part of the proposed article in which it was affirmed, and retained only so much

as excluded the question of its suspension from the ordinary range of congressional legislation. The convention itself must have concurred in their views; for in the constitution, as digested, and finally ratified, and as it stands now, there is neither enactment nor recognition of the privilege of this writ, except as it is implied in the provision that it shall not be suspended. It stands then under the constitution of the United States, as it was under the common law of English America, an indefeasible privilege, above the sphere of ordinary legislation. . . ." (28 Fed.Cas. at page 688, No. 16,726)

[15] The complete text of the section is as follows:

"Sec. 14. *And be it further enacted,* That all the before-mentioned courts of the United States, shall have power to issue writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. And that either of the justices of the supreme court, as well as judges of the district courts, shall have power to grant writs of *habeas corpus* for the purpose of an inquiry into the cause of commitment. *Provided,* That writs of *habeas corpus* shall in no case extend to prisoners in gaol, unless where they are in custody, under or by colour of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify." (1 Stat. 81, 82)

of the Habeas Corpus Act of 1679 was to allow prisoners committed for criminal or supposed criminal matters to be speedily admitted to bail where bailable, and the provisions of that statute extended only to cases of commitment or detainer for such matters. The statute of 56 Geo. III somewhat liberalized the writ in England by enacting that the truth of the facts set forth in the return issued in respect of anyone "confined or restrained of his or her liberty (otherwise than for some criminal or supposed criminal matter, and except persons imprisoned for debt, or by process in any civil suit) . . . could be inquired into either by the judges or court authorized to issue the writ." Under Section 14 of the Judiciary Act of September 24, 1789, the writ was restricted to its common law purpose and the return could not be traversed. Ex parte Watkins, 1830, 3 Pet. 193, 202, 7 L.Ed. 650. The rule seems to have been the same under the Acts of March 2, 1833, 4 Stat. 632, and August 29, 1842, 5 Stat. 539. But in the Act of February 5, 1867, 14 Stat. 385, Congress extended the writ to "all cases where any person may be restrained of his or her liberty in violation of the constitution or of any treaty or law of the United States," and adopted also the procedural regulations of the present statute (Rev.Stat. §§ 754–761 (1875), 28 U.S.C.A. §§ 451–461) which we have set forth in resume above. "The effect [of this] is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the act of 31 Car. II, c. 2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to 'dispose of the party as law and justice require.'" See Frank v. Mangum, 1915, 237 U.S. 309, 330, 331, 35 S.Ct. 582, 59 L.Ed. 969.[16]

The provision of the statute that the court or justice or judge "shall forthwith award a writ of habeas corpus unless it appears from the petition itself that the party is not entitled thereto" is but statutory recognition of what has long been settled—that the writ is a writ of right although it does not issue as of course,

i. e., as does a subpoena or summons, but only upon probable cause. Hobhouse's case, 3 B. & Ald. 420, 106 Eng.Rep. 716 (K.B.1820); Simmons v. Georgia Iron & Coal Company, 1903, 117 Ga. 305, 43 S.E. 780, 61 L.R.A. 739; Crooms v. Schad, 1906, 51 Fla. 168, 40 So. 497; Church on Habeas Corpus, §§ 92–3; 25 Am.Jur. (Habeas Corpus) §§ 10, 15, 131. Upon probable cause being shown a writ of habeas corpus cannot be denied to the applicant therefor since it becomes a constitutional right, and since its granting is made an imperative duty by statute. As it was put in Ex parte Milligan, 1866, 4 Wall. 2, 107–114, 18 L.Ed. 281, a petition for a writ of habeas corpus, properly presented to a court of competent jurisdiction, is the institution of a "cause" on the petitioner's behalf, and the allowance or refusal of the process is a matter of law and not of discretion. According to that decision "when the petition is filed and the writ prayed for, it is a *suit,* the suit of the party making the application." See Church, *op. cit. supra,* § 92. By probable cause is therefore meant no more or less than the statement of a cause of action, *i. e.,* the allegation of facts which if true entitle the petitioner to his release. A petition seeking the writ must, although it need not be phrased in nicely formal terms, contain allegations to the effect that the petitioner is imprisoned or otherwise restrained of his liberty, and allegations showing in whose custody he is detained and the place of imprisonment and the illegality of the restraint. In short, it should show on its face, upon the assumption of the truth of the facts alleged, as if being tested on demurrer, that the petitioner is entitled to discharge from the imprisonment or restraint described. But if the petition does state such facts then the writ must issue and the person alleged to be guilty of the unlawful restraint be thus required to produce the body of the petitioner and by return and answer show the basis of the restraint, or, as explained and decided in Walker v. Johnston, the proceeding may go forward by rule to show cause rather than by immediate issuance of the writ. But that one of such two procedures must forthwith follow upon the presentation to the court or judge of a petition stating a cause of action for release is settled absolutely.

---

[16] The discussion in the text of the common law and statutory history of the writ is based upon Church on Habeas Corpus; see especially §§ 166–8. See also 9 Holdsworth's History of English Law (1938) pp. 112 et seq.

The decision in Walker v. Johnston that the hearing on controverted issues of fact must be either *ore tenus* or by depositions is responsive to the requirement of the Fifth Amendment that no person shall be deprived of life, liberty or property without due process of law. "Can it be doubted that due process of law signifies a right to be heard in one's defence? If the legislative department of the government were to enact a statute conferring the right to condemn the citizen without any opportunity whatever of being heard, would it be pretended that such an enactment would not be violative of the Constitution? If this be true, as it undoubtedly is, how can it be said that the judicial department, the source and fountain of justice itself, has yet the authority to render lawful that which if done under express legislative sanction would be violative of the Constitution. If such power obtains, then the judicial department of the government sitting to uphold and enforce the Constitution is the only one possessing a power to disregard it. If such authority exists then in consequence of their establishment, to compel obedience to law and to enforce justice courts possess the right to inflict the very wrongs which they were created to prevent." Hovey v. Elliott, 1897, 167 U.S. 409, 417, 418, 17 S.Ct. 841, 42 L.Ed. 215. See, also, Galpin v. Page, 1873, 18 Wall. 350, 368, 21 L.Ed. 959;[17] Ex parte Wall, 1882, 107 U.S. 265, 289, 2 S.Ct. 569, 27 L.Ed. 552.[18] The right of hearing under the due process clause includes the right of each party to a cause to introduce evidence in support of his claim or defense, to hear the evidence introduced against him, to test the same by cross-examination, the right that nothing shall be treated as evidence which is not introduced as such, and the right to make argument on questions of both law and fact. As said in Morgan v. United States, 1936, 298 U.S. 468, 480, 56 S.Ct. 906, 80 L.Ed. 1288:

". . . The requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The 'hearing' is the hearing of evidence and argument. . . ."

To the effect that nothing can be treated as evidence which is not introduced as such see United States v. Abilene & So. Ry. Co., 1924, 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016. For the proposition that cross-examination of a witness is a matter of right see Alford v. United States, 1931, 282 U.S. 687, 691, 51 S.Ct. 218, 75 L.Ed. 624. The right to be heard on questions of law as well as of fact of course includes the right to be heard in support of the sufficiency of the allegations in which a party states his cause of action or defense. Cf. Cohen v. Biddle, 8 Cir., 1926, 12 F.2d 704.

It needs to be added to the foregoing statement of general principles merely that detention, after recovery of sanity, of one who has been confined by reason of insanity, is illegal—liberty can as well be lost in a mental hospital as in a jail; and the proper remedy for determining the question of restoration of sanity is a habeas corpus proceeding. Barry v. Hall, 1938, 68 App.D.C. 350, 98 F.2d 222.

## II

Application of the foregoing principles to the facts of the instant case necessitates the following conclusions: (1) There was error in the action of the trial court in refusing, upon the presentation to the court of the petition for a writ, either

---

[17] ". . . It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is justly administered."

[18] In Ex parte Wall the Supreme Court quoted with approval the observations as to due process of law made by Judge Cooley in his Constitutional Limitations at page 353:

" 'Perhaps no definition,' . . . 'is more often quoted than that given by Mr. Webster in the Dartmouth College case: "By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities, under the protection of the general rules which govern society." ' "

to issue a writ or in the alternative a rule to show cause—under the practice recognized and authorized by Walker v. Johnston. The petition stated a cause of action entitling the appellant to discharge from custody if the allegations thereof were true. It alleged that the appellant was restrained of his liberty, described the person detaining him and the place of detention, and asserted illegality of the restraint by alleging that the appellant was at the time of the filing of the petition of sound mind and that his original criminal sentence had expired. These allegations alone, if true— and as we have pointed out above they must at this stage of a habeas corpus proceeding be taken as true, as if on demurrer, and this even if improbable or unbelievable (which on their face they were not)—stated a cause of action for release. The additional allegation that the appellant "was not properly adjudicated" insane was in this form but a conclusion of law. But this did not invalidate the other allegations of the petition; and it would have been proper, if upon hearing the appellant desired to press this aspect of the petition, to permit an amendment of the petition setting out the facts upon which the claim of improper adjudication was made and if necessary an amendment of the return, so that inquiry could be made into the question whether or not the original adjudication of insanity was void for lack of jurisdiction to enter the judgment or merely erroneous. If void, the judgment was a proper subject of attack in the habeas corpus proceeding, Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; if the judgment was merely erroneous, it was not the proper subject of such an attack, Matter of Gregory, 1911, 219 U.S. 210, 31 S.Ct. 143, 55 L.Ed. 184; United States v. Pridgeon, 1894, 153 U.S. 48, 14 S.Ct. 746, 38 L.Ed. 631; United States v. Davis, 1901, 18 App.D.C. 280. Had the court either issued a writ directed to Dr. Overholser, the person described in the petition as detaining the appellant in custody, and thus required him to certify to the court the true cause of the detention and, at the time of making this return, also to bring the body of the appellant before the judge who issued the writ, or had the court, under the permissible alternative practice, issued a rule to show cause why a writ should not issue, with resultant return and answer on the part of Dr. Overholser, and had the court under either such alternative permitted a traverse, if necessary, by the appellant, then the case would in regular manner have been brought to hearing either upon questions of law, if there were no controverted issues of fact, or upon the latter if there were such, or upon both.

■ (2) The trial court erred in failing to accord the appellant a hearing in respect of the merits of his petition and in respect of the prior adjudications which were brought to the attention of the court by the memoranda of the clerk, and in respect of the representations made in Dr. Overholser's letter. That the order of the court denying the writ was based upon these adjudications and representations is made clear by the memorandum opinion of the trial judge which we have set out above. By considering these prior adjudications and the representations of Dr. Overholser, the trial court denied the appellant the right to be heard on questions of both fact and law. He was given no opportunity to traverse the assertions of fact in Dr. Overholser's letter. He was not even apprized of them. The letter was given the effect by the trial court of an answer to the appellant's petition and was also treated as proof. The appellant's petition and the letter of Dr. Overholser considered together raised an issue of fact. The appellant alleged that at the time of presenting his petition he was of sound mind; Dr. Overholser's letter asserted in effect that he was not in that it stated that he had been adjudicated insane, had shown no change since his appearance in court on July 1, 1940, and had not recovered from his mental disorder. As appears from the memorandum opinion, the trial judge made a determination of this issue of fact against the appellant by specifically finding—upon the basis of the original adjudication of unsoundness of mind and upon the basis of the remand to custody of July 1, 1940, and upon the information in the letter of Dr. Overholser—that "Dennis Rosier has shown no change since his previous appearance in court" in July, 1940. On this issue the appellant was given no opportunity either to know of the "evidence" presented against him in Dr. Overholser's letter and in the memoranda of the clerk, or to test the same by cross-examination; and he was given no opportunity to present evidence in his own behalf, and no opportunity to make argument. It is true that there is a presumption that insanity once adjudicated continues. Meoteris v. United States, 7 Cir., 1939, 108 F.2d 402.

But that is but a rebuttable presumption of fact and the appellant had a right to meet that presumption by showing, if he could, that during the period of approximately three and one-half months which had elapsed since his remand to custody on July 1, 1940, he had regained his mental health. There were also issues of law upon which the appellant might well have desired, but was given no opportunity, to be heard. One was the question of the extent to which, if at all, the prior adjudications were binding or persuasive. Barry v. Hall, supra. Another was the question whether the assertion of Dr. Overholser that the petition in the instant case was prepared for the appellant "by another patient who has a habit of stimulating this sort of legal action among his fellow-patients" was entitled to any consideration whatever by the court. That the trial court in denying the writ did give consideration to that assertion is made clear by the memorandum opinion.

What the outcome of such a hearing as the appellant was entitled to under the provisions of the statutes relating to habeas corpus proceedings and under the due process clause of the Constitution might have been we do not of course assume to say. It might have been made to appear, and the trial court might have decided, that the appellant had regained his sanity and was entitled to discharge. It might have been determined that the assertions of Dr. Overholser that the appellant was still of unsound mind were correct; that is, the court might have reached, after a proper hearing, the same conclusion that it reached without a hearing. But that is of no moment. The determination actually reached by the trial court was reached without a proper hearing. The necessity for hearing under the law of the land cannot be escaped. *"Qui aliquid statuerit parte inaudita altera, aequum licet dixerit, haud aequum fererit."* (He who decides anything, one party being unheard, though he should decide right, does wrong. 6 Co. 52; 4 Bla.Com. 483.)

### III

The principal contention of the Government in attempted justification of the action of the trial court rests upon the terms of the statute providing for proceedings in forma pauperis and upon Kinney v. Plymouth Rock Squab Company, 1915, 236 U.S. 43, 35 S.Ct. 236, 59 L.Ed. 457, construing the same. The contention is that under the statute authorizing court proceedings in forma pauperis and the habeas corpus statute read together in the light of the construction of the former by Kinney v. Plymouth Rock Squab Company, the question whether a person seeking the issuance of a writ of habeas corpus shall be allowed the same and a hearing thereon without payment of the usual fees and costs is a pure question of discretion for the trial court, to which the application for a writ is made; and the contention is that therefore the action of a trial court in respect of the issuance or refusal of a writ and the granting or denying of a hearing can be reversed only for abuse; and it is asserted that there was no abuse in the instant case.

The statute authorizing court proceedings by persons unable to pay the usual fees and costs provides as follows: (U.S.C.A. tit. 28, §§ 832–836)

"§ 832. Any citizen of the United States entitled to commence any suit or action, civil or criminal, in any court of the United States, may, upon the order of the court, commence and prosecute or defend to conclusion any suit or action, or an appeal to the circuit court of appeals, or to the Supreme Court in such suit or action, including all appellate proceedings, unless the trial court shall certify in writing that in the opinion of the court such appeal is not taken in good faith, without being required to prepay fees or costs or for the printing of the record in the appellate court or give security therefor, before or after bringing suit or action, or upon appealing, upon filing in said court a statement under oath in writing, that because of his poverty he is unable to pay the costs of said suit or action or appeal, or to give security for the same, and that he believes that he is entitled to the redress he seeks in such suit or action or appeal, and setting forth briefly the nature of his alleged cause of action, or appeal. In any criminal case the court may, upon the filing in said court of the affidavit hereinbefore mentioned, direct that the expense of printing the record on appeal be paid by the United States, and the same shall be paid when authorized by the Attorney General. (July 20, 1892, ch. 209, § 1, 27 Stat. 252; June 25, 1910, ch. 435, 36 Stat. 866; June 27, 1922, ch. 246, 42 Stat. 666; Jan. 31, 1928, ch. 14, § 1, 45 Stat. 54.)" 28 U.S.C.A. § 861b.

Other sections are set forth in the margin.[19] As originally enacted the statute applied only to plaintiffs in civil suits and to actions in trial courts. The 1910 amendment made it applicable to defendants, to criminal cases, and to appellate proceedings. The House Report[20] which recommended passage of the bill[21] which in 1892 became the original act, said:

"This bill proposes to open the United State Courts to a class of American citizens who have rights to be adjudicated, but are now excluded practically for want of sufficient money or property to enter the courts under their rules.

   *     *     *     *     *

"In short, this bill presents the question whether this Government, having established courts to do justice to litigants, will admit the wealthy and deny the poor entrance to them to have their rights adjudicated.

"The proposed law will not admit of vexatious suits. It is well guarded. In order to get the privilege of the court which litigants with money can demand without question and compel the court to hear their cases, anyone of these people who desires to enter the courts without money must first file in the court a statement under oath that because of his poverty he is unable to pay the costs of said suit or action or to give security for the same. He must also state that he believes he is entitled to the redress asked, and must set out the nature of his alleged cause of action.

"The court may dismiss the suit at any time if it be made to appear that the allegation of poverty is probably untrue, or if he be satisfied that the alleged cause of action is frivolous or malicious."[22]

In Kinney v. Plymouth Rock Squab Company the statute in the form it took after the amendment of 1910 was before the Supreme Court for construction and application. Prosecuting a writ of error allowed by a circuit judge, the plaintiff-in-error asked to be permitted to docket the cause and continue the proceedings in forma pauperis. The Supreme Court, speaking through Mr. Chief Justice White, after setting out *in haec verba* the first section of the statute (§ 832, supra) as it now stands and summarizing the other sections, commented as follows:

"Prior to the amendment of 1910 on the face of the statute three things were certain: (a) that the statute imposed no imperative duty to grant a request to proceed as a poor person but merely conferred authority to do so when the fact of

---

[19] "§ 833. After any such suit or action shall have been brought, the plaintiff may answer and avoid a demand for fees or security for costs by filing a like affidavit, and willful false swearing in any affidavit provided for in this section or section 832 of this title, shall be punishable as perjury as in other cases. (July 20, 1892, ch. 209, § 2, 27 Stat. 252.)

"§ 834. The officers of court shall issue, serve all process, and perform all duties in such cases, and witnesses shall attend as in other cases, and the plaintiff shall have the same remedies as are provided by law in other cases. (July 20, 1892, ch. 209, § 3, 27 Stat. 252.)

"§ 835. The court may request any attorney of the court to represent such poor person, if it deems the cause worthy of a trial, and may dismiss any such cause so brought if it be made to appear that the allegation of poverty is untrue, or if said court be satisfied that the alleged cause of action is frivolous or malicious. (July 20, 1892, ch. 209, § 4, 27 Stat. 252.)

"§ 836. Judgment may be rendered for costs at the conclusion of the suit as in other cases: *Provided,* That the United States shall not be liable for any of the costs thus incurred. (July 20, 1892, ch. 209, § 5, 27 Stat. 252.)"

[20] H.R.Rep. No. 1079, 52d Cong., 2d Sess. (1892) 1.

[21] H.R. 8153, 52d Cong., 2d Sess. (1892).

[22] The Report said also: "The question is narrowed therefore to this: Will the Government allow its courts to be practically closed to its own citizens, who are conceded to have valid and just rights, because they happen to be without the money to advance pay to the tribunals of justice? Even then they will not have an equal chance with other men, for men able to prosecute gain cases that would be dismissed by the court had it the power. [*sic*] Many humane and enlightened states have such a law, and the United States Government ought to keep pace with this enlightened judgment.

"The Government will not determine questions involving the liberty of the citizen without furnishing him his witnesses on his demand. Property is next in importance, and the less a man has the more important it is to him, and the more reprehensible to deprive him of it unjustly." (H.R.Rep. No. 1079, 52d Cong., 2d Sess. (1892) 2.)

poverty was established and the case was found not to be frivolous, that is, was considered to be sufficiently meritorious to justify the allowance of the request; (b) that there was no power to grant such a request when made by a defendant; and (c) that there was also no authority to allow a party to proceed as a poor person in appellate proceedings in this court or the circuit courts of appeals. Bradford v. Southern Railway [Co.], 195 U.S. 243, 25 S.Ct. 55, 49 L.Ed. 178. Clarifying the first section as amended by these considerations, it becomes clear that the sole change operated by the amendment was to bring defendants within the statute and to extend its provisions so as to embrace, first, proceedings on application for the allowance of a writ of error or appeal to this court and the Circuit Court of Appeals, and second, the appellate proceedings in such courts. This being true, it is clear that as to the new subjects, the allowance of the right in those cases was made to depend upon the exercise of the same discretion as to the meritorious character of the cause to the same extent provided under the statute before amendment. That is to say, there is no ground for a contention that at one and the same time the statute brought certain proceedings within its scope and yet exempted them from its operation.

Indeed this conclusion is not alone sustained by the implication resulting from the fact that the safeguards provided for the exercise of the authority found in the statute as originally enacted were not changed by the amendment, but further plainly results from the express provisions of· the amended section manifesting the purpose to subject the granting of the right in both the new instances provided for, to the exercise of the judicial discretion to determine the poverty and good faith of the applicant and the meritorious character of the cause in which the relief was asked." [236 U.S. at page 45, 46, 35 S.Ct. at page 237, 59 L. Ed. 457]

After thus explaining the meaning of the statute the Court proceeded (it assumed the affidavit of poverty to be sufficient) to examine into the question whether the case presented for appeal was of meritorious character. In doing so it examined with particularity into the proceedings upon which the plaintiff-in-error relied as justifying the appeal and concluded that the case for appeal was not meritorious, that is, that on the face of the case sought to be appealed there was no error. We set forth in the margin a statement of the proceedings upon which the plaintiff-in-error relied as entitling him to an appeal,[23]

---

[23] According to the Supreme Court's summation thereof, the record which the plaintiff-in-error Kinney sought to docket showed the following: On October 14, 1909, Kinney caused a writ of attachment to issue against the Plymouth Rock Squab Company, returnable on December 9, 1909, to the Circuit Court of the United States for the District of Massachusetts (later the District Court of the United States for the District of Massachusetts). Prior to the return day mentioned Kinney left with the clerk of the Circuit Court the writ and declaration together with an order directing him to enter the action and Kinney's appearance therein. The Company failed to enter an appearance on the return day named and on December 26, 1909, Kinney sent to the clerk a written motion for entry of default judgment. The clerk refused to enter judgment against the Company on the ground that the writ of attachment had been made returnable on a day other than a first day of a statutory term. The rules of the court required returns to be made on such a day. On the first day of the succeeding statutory term the clerk caused the case to be entered. The Company made an appearance on the following day and some time later filed a demurrer and answer. Kinney took no further steps in the prosecution of this case, but he did institute both in the United States District Court for the District of Massachusetts and in the United States District Court for the Eastern District of Pennsylvania other similar actions. As a result of these actions the First and Third Circuit Courts of Appeals held that the clerk of the Massachusetts court, in view of its rules, had properly refused to give effect to writs of attachment against the Company which Kinney had made returnable on days other than a first day of a statutory term. The Supreme Court affirmed the judgment of the Court of Appeals for the Third Circuit. In May, 1913, Kinney brought suit in the Massachusetts District Court to recover on a judgment which, contrary to both law and fact, he assumed to have been rendered against the Company in his 1909 suit. The District Court gave judgment against him and the Circuit Court of Appeals for the First Circuit affirmed. It was with respect to this judgment of affirmance that Kinney sought leave of the Supreme Court to prosecute a writ of error in

and a quotation from the opinion indicating why the Court concluded that the case presented for appeal was lacking in merit. In fine, the case as written declares that a court to which is presented an application to proceed in forma pauperis has the duty of determining as a condition to the allowance of the application that there is poverty in fact, that the applicant is in good faith, and that the cause sought to be proceeded upon is meritorious in the sense that, if presented to a trial court, it shows on its face a cause recognized by law as actionable or, if presented to an appellate court, that there has been probable error in the disposition below. Cf. Pothier v. Rodman, 1923, 261 U.S. 307, 43 S.Ct. 374, 67 L.Ed. 670; Washington-Southern Co. v. Baltimore Co., 1924, 263 U.S. 629, 44 S.Ct. 220, 68 L.Ed. 480.

The contention of the Government in respect of the effect of the forma pauperis and habeas corpus statutes read together in the light of the construction of the former by Kinney v. Plymouth Rock Squab Company is in essence an assertion that the Supreme Court in defining the duty of inferior courts in respect of determining the truth of the poverty affidavit, the question of good faith, and the question whether or not a meritorious cause of action for trial or appeal is stated by the applicant, ruled in terms of "judicial discretion." It is true that the opinion did use that phrase. But we think it clear that the Court was not using the term in the strict sense, from which it would follow that there could be no reversal of the action of a trial court except for abuse. In the strict sense the term "judicial discretion" applies in the large to administrative rulings such as rulings upon motions to set cases for trial, for continuance, for the appointment of receivers, auditors or masters, rulings limiting or extending the range of cross-examination, and the like. In the administrative situations to which such rulings relate a trial judge, as a matter of practical necessity must have authority to act with substantial finality; otherwise the judicial process will be unduly halted. Therefore upon appeal from rulings in such situations there is no reversal, even if the appellate court would itself have ruled differently, unless there has been what is termed an abuse of discretion. By this is meant, ordinarily, that the trial judge in making the ruling has been moved by extra-judicial considerations, rather than by those which should properly appeal to the judicial mind, or has failed to take account of the latter. But where a trial judge is called upon to decide questions of fact, though he is of course exercising judgment, he has no "discretion" to make a decision in the absence of evidence or contrary to evidence upon which reasonable minds could not differ; and where he is called upon to decide questions of law, though again he is called upon to exercise his judgment, he has no "discretion" to make a determination contrary to law. Therefore, if upon appeal from such rulings the appellate court disagrees, reversal must follow. Now it is to be observed that the questions which it was said in Kinney v. Plymouth Rock Squab Company a judge considering a petition for leave to proceed in forma pauperis must determine are not administrative questions but questions of fact and law: whether the affidavit of poverty is true or false and whether the applicant is proceeding in good faith or with malice, are questions of fact; whether the cause stated is meritorious, i.e., whether the complaint or petition offered to be proceeded upon contains allegations which if true entitle the complainant or petitioner to relief under our system of law, is a question of law, exactly such a question as arises upon demurrer. It is to be noted that despite the fact that the Court in Kinney v. Plymouth Rock Squab Company spoke, in defining the duties of judges on applications to proceed in forma pauperis, in terms of "judicial discretion," it itself in examining into the question whether there was a meritorious cause for appeal, i.e.,

---

forma pauperis. In refusing him leave to do so the Supreme Court said:

"'Under these circumstances we think it manifest that no ground is shown for the allowance of the prayer of the petition. The case proceeds upon the erroneous assumption that a judgment was rendered in a cause which is yet pending and undisposed of; in other words, the case assumes as a basis for relief the existence of that which does not exist. It seeks collaterally to attack that which was only susceptible of being assailed directly. It disregards the conclusive effect of the judgments as to the want of merit in the claim rendered in the courts of the first and third circuits and by implication disregards the legal consequences necessarily arising from the former action of this court. . . .'" (236 U.S. at page 49, 35 S.Ct. at page 239, 59 L.Ed. 457)

whether there was "probable error," inquired with pains into the merit of the determination below as a question of law and not as a question of discretion in the strict sense of that term. It would be abhorrent to reason to conclude that the Supreme Court in Kinney v. Plymouth Rock Squab Company intended to hold that trial courts are invested with discretion to rule erroneously on either questions of fact or law. But even if the Court in Kinney v. Plymouth Rock Squab Company was using the term "judicial discretion" in its strict sense, this cannot aid the Government in the instant case. For it would be a clear abuse of discretion for a trial court to reject an application to commence an action in forma pauperis, the truth of the allegations of poverty in which was not contested and which on its face stated a cause of action and which contained nothing on its face indicating that it was frivolously or vexatiously filed. And it would be an equally clear abuse of discretion, in view of Walker v. Johnston, supra, for a trial court to reject a petition for a writ of habeas corpus which on its face stated a cause of action for release.

There are other defects in the contention of the Government. First, Kinney v. Plymouth Rock Squab Company is not a case involving an application to proceed in forma pauperis on a petition for a writ of habeas corpus. The asserted cause of action involved therein was one for recovery of money upon a judgment. Therefore the decision is not a binding ruling for habeas corpus proceedings. Second, the case on its facts involves appellate proceedings. The right to an appeal is not constitutional. Therefore the decision is not a binding ruling in respect of the right of initial access to the courts which right is constitutional. Third, if the statute providing for proceedings in forma pauperis and the habeas corpus statute read together in the light of Kinney v. Plymouth Rock Squab Company are construed, as the Government would construe them, so as to vest in a trial court power, in a case in which a petition for a writ of habeas corpus states upon its face a cause of action for release and in which there is no dispute as to the truth of the affidavit of poverty and nothing on the face thereof to show the application to proceed as a poor person is frivolous or vexatious, to forbid a petitioner access to the court merely because he is unable to pay the usual costs and fees, grave questions of constitutionality of the statutes in question would be raised. Under a familiar rule, if statutes are reasonably susceptible of a different construction they are not to be given one which raises serious doubts as to constitutionality. The due process clause of the Fifth Amendment guarantees to all who claim to have been wronged access to the courts, so far as is necessary to determine first whether their claimed wrong is one recognized by the law as actionable, and if so, second, so far as necessary to grant them a hearing on their cause as stated. It would be difficult to justify constitutionally a discrimination between those unable to pay fees and costs and those able to do so so far as right of access to the courts is concerned.

IV

It remains to consider certain additional contentions of the Government and one of the appellant: (1) The Government urges that the order of October 28, 1940, merely denied leave to file the petition for the writ without prepayment of costs and had no legal effect as a judgment on the merits of the petition. This contention is belied by the terms of the order, which said "Let the petition to file without prepayment of costs *and the petition for writ of habeas corpus* be denied this 28th day of October 1940." (Italics supplied). That there was a ruling upon the merits by this order the trial judge put beyond doubt when in his memorandum opinion of November 18, 1940, he made his "findings" applicable to the action upon the petition for the writ. The judge said: "For the same reasons hereinbefore outlined, I did not permit the so-called petition for a writ of Habeas Corpus dated October 15, 1940, to be filed." What the judge and through him the court did was to treat the petition as not filed by denying the application to file it and still treat it as filed by denying the petition itself and by ruling on the merits. It would be monstrous to conclude that trial courts could deny to those who claim to be wronged their constitutionally guaranteed right of access to the courts and forbid them appeals by the mere device of denying them leave to file their petitions. We here speak, however, in terms of substance, not of form. The absence of a formal filing number is not of moment. It is to be assumed that all petitions for writs of habeas corpus when offered in forma pauperis are duly received by the

clerk of the trial court and given some permanent position in the files or records of the court, whether formally marked with a filing or docket number in the same manner as fee paid cases or not. It is not the manner of their marking or filing which is important. What is important is that whether marked "filed" or "docketed" or not, they be presented to and given by a judge consideration of the kind guaranteed by the statutes and the Constitution.

Incidental to its contention that there was no ruling upon the merits of the petition the Government asserts that mandamus to compel the trial court to accept jurisdiction of the cause was the appellant's proper remedy. But this argument falls with the contention to which it is incidental. By ruling upon the merits of the petition the trial court did accept jurisdiction.

(2) The Government contends that an application to proceed in forma pauperis is presented and acted upon ex parte and that therefore the court may act informally and give consideration to matters not stated in the application. The argument rests upon a misconception of an ex parte proceeding. Such a proceeding is one which takes place in the absence of the party *against* whom judicial action, on a temporary basis, is sought, such as upon the issuance of a restraining order, a rule to show cause, a writ of attachment or garnishment or the like. Ultimately, of course, that is, before final action of the court, the opposite party must be heard; but such proceedings are initiated by the applicant alone. There is nothing in the nature of ex parte proceedings which permits a ruling *against the applicant himself* upon the basis of considerations of which he is not allowed to know and upon the merit of which he is not allowed to be heard.

(3) The Government urges with great vigor the administrative burden upon the trial court of petitions for writs of habeas corpus in forma pauperis cases involving asserted recovery from insanity. It states that in the three-months' period from September 13 to December 13, 1941, thirty-eight out of forty-six petitions for writs of habeas corpus in the District Court were presented in behalf of persons confined in St. Elizabeths Hospital; that hearings were held on only eight of these and the other thirty disposed of either by dismissal because of insufficiency of allegations, or by refusal, under the provisions of the forma pauperis statute, of leave to file; and the Government asserts that in the eight cases in which hearings were held there were no discharges from custody. The time and expense thus involved, asserts the Government, demonstrates the need of a discretionary procedure.

We do not assume to minimize the burden of work upon the trial court. But the whole answer to this contention of the Government is that administrative convenience cannot be set up against the right to be heard, as guaranteed by the statutes and Constitution, when a cause of action for relief is stated. The comment made by Mr. Justice Cardozo in Ohio Bell Telephone Co. v. Commission, 1937, 301 U.S. 292, 305, 57 S.Ct. 724, 81 L.Ed. 1093, in holding that there can be no escape by administrative tribunals from the necessity of granting fair and open hearing, in the due process sense of the word, as one of the rudiments of fair play assured to every litigant by the Constitution as a minimal requirement, is equally applicable to courts: "There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored." If the burden of work upon the trial court is too great—as there is much reason to believe in view of the large volume of business in this jurisdiction—the remedy is not by denying right of hearing to those who claim that they are restrained of their liberty without warrant of law; it is rather by Congressional action to enlarge the personnel of the courts. Administrative inconvenience, even occasional abuse of the facilities of the courts, is but a small price to pay for the precious right of access to the courts guaranteed under our system of government to all who claim to be wronged. It is in those forms of government against which we are now waging war that administrative convenience and "efficiency" are set ahead of the citizen's right to be heard in respect of his liberty.

For a court to fix a period which must expire, after the dismissal, on hearing, of a petition for a writ, before a second petition stating on its face a cause of action for release will be heard by a trial court, would be judicial violation of the constitutional provision that the privilege of the writ of habeas corpus shall not be suspended unless in cases of rebellion or invasion the public safety may require it.

(4) The appellant contends that the trial court should have requested an attorney to represent him. Under Section 835 of the forma pauperis statute printed in the margin above a trial court may request any attorney to represent a poor person if it deems the cause worthy of a trial. Undoubtedly the omission of the trial court to appoint an attorney in the instant case was due to the fact that the court (erroneously) reached the conclusion that the cause was not worthy of trial. We shall assume that in the further proceedings to be had consistently with this opinion the trial court will properly exercise its discretion in respect of the appointment of counsel. We indicate herein that on the face of the appellant's petition a cause of action for the issuance of a writ or of a rule to show cause is stated, and it seems obvious from the informal representations in the letter of Dr. Overholser that there will be a contest on questions of fact relating to the appellant's state of mental health. Under these circumstances the appointment of counsel ought to be made.

In accordance with the foregoing the judgment of the trial court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

VINSON, Associate Justice (concurring).

I concur in the result, and add a short statement of my views on this case.

The petition for the writ was filed, if substance rather than form be considered.

The petition stated facts which, if true, entitled appellant to be discharged from custody.

The writ should have issued or, in the alternative, a rule to show cause.

The appellant, represented by competent counsel, was entitled to a hearing.

RUTLEDGE, Associate Justice (dissenting).

I cannot agree that the Constitution guarantees an adjudicated insane person the right to hearings upon his sanity as often as he sees fit to file petitions alleging it has been restored. Such a view would mean that there is no limit to the number or frequency of hearings such a person might have. Freed, in habeas corpus, from the limitations of *res judicata*,[1] he could file petitions as often as he might wish, weekly, monthly or at any other interval, and the court would have no alternative but to hear each application upon the merits.

Individual freedom, of course, is paramount to mere administrative convenience, expediency and efficiency in operation of the courts and other governmental agencies. Habeas corpus is the historic instrument for preserving it. But adequate protection does not require a litigious capacity of such nuisance value that hearings must be had repeatedly upon the same issue in the petitioner's uncontrolled and unlimited choice. There must be some limit to the frequency with which he can force the court to determine and redetermine his sanity.[2] I think therefore that the controlling issues in the case are, What is that limit? Has it been exceeded on these facts?

Neither the habeas corpus act (28 U.S. C. §§ 451–461) nor the *forma pauperis* statute [28 U.S.C. §§ 832–836, D.C.Code (1940) § 11—1508] purports in specific terms to impose such a limit. The former empowers the Supreme Court and the district courts to issue the writ; prescribes the mode of application; directs that the writ shall issue "unless it appears from the petition itself that the party is not entitled thereto"; requires the respondent to make return and produce the petitioner's body; and commands that the cause be disposed of "in a summary way * * * by hearing the testimony and arguments * * *."

The *forma pauperis* statute, as applicable here, purports to authorize any citizen entitled to commence any suit to do so and prosecute it to conclusion "upon order of the court," without prepayment of fees or costs, by filing an affidavit of poverty, setting forth that he believes he is entitled to the redress and the nature of his cause of action. Both statutes are involved and the broad question is whether, on the facts, either empowers the trial court to (1) decline to consider the petition or (2)

[1] Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989; Wong Doo v. United States, 1924, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999; Barry v. Hall, 1938, 68 App.D.C. 350, 98 F.2d 222.

[2] *Cf.* authorities cited in note 1 *supra*.

dispose of it without formal hearing or production of the petitioner's body.

I agree that under Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L. Ed. 830, it is the trial court's duty to issue the writ or a rule to show cause why it should not issue, and to afford a hearing upon the issues of fact and law, when a petition in habeas corpus is presented which sets forth cause for relief.

I think also, in respect to the right to proceed in *forma pauperis,* that it would be an unconstitutional discrimination to deny relief to one wrongfully imprisoned merely because of his poverty when it would be available, in the same circumstances apart from that factor, to all who can bear the necessary expense. Boykin v. Huff, 1941, 73 App.D.C. 378, 121 F.2d 865. Whatever may be true in civil actions not involving life or liberty, a system of justice which would posit these rights upon ability to pass the financial barriers normally placed at the threshold of the courts would make one law for the rich or well-to-do and another for the poor. That discrimination would be especially abhorrent in application to the fundamental right of habeas corpus. In my opinion therefore a statute which would attempt to vest uncontrolled discretion in a trial court or judge to deny access to the courts in habeas corpus merely for poverty would be invalid. Accordingly, Section 832 must be construed to avoid any such consequence. Hence, notwithstanding the language which purports to give the trial judge discretion to deny appeal, by certifying his opinion that it is not taken in good faith, I think the court's application of Section 832 to habeas corpus proceedings is subject to review in three respects, namely, (1) whether poverty exists in fact; (2) whether the petition is filed in good faith; (3) whether the cause stated is meritorious, that is, whether a cause of action is stated. The last presents an issue of law, the former two, so far as they are distinct from the third, a question of fact. It follows that the petitioner is entitled to be heard in each of these respects in a hearing appropriate to the issue raised. The court therefore does not

have an absolute and uncontrolled discretion to determine poverty, good faith or merit.[3]

But a sufficient protection of the petitioner's liberty would seem to be given if the review afforded as to the existence of poverty or good faith (when the latter is not founded upon want of merit) is on the question whether the court's discretion has been abused. Except for verbal difference, this amounts in effect to review of whether there is substantial evidence to support its finding. The review upon the third issue arises on a question of law, and when the finding of want of good faith is based on want of merit that is true also of the second issue. Again the difference is only verbal in regarding the review as being for abuse of discretion or for error, since erroneous decision that a cause of action is not stated would amount to abuse of discretion in legal effect.

But we are not concerned primarily with the right of appeal since, although the court found that relief by appeal was not "reasonably likely" to be given and denied permission to note the appeal *in forma pauperis,* any prejudice from that error has been cured by this court's allowance of an appeal and assignment of counsel to represent the petitioner here. The question now requiring attention is whether there was prejudicial error or abuse of discretion when the court, in its own words, "did not permit the so-called petition * * * to be filed," but went on to deny the writ, and later to support this, as well as denial of the petition to appeal, by findings of fact, and did these things without affording petitioner a hearing.

This procedure was followed, apparently, in pursuance of the practice which has regarded the matter of entertaining these petitions and allowing appeals as entirely discretionary with the trial court or judge. That view of the statutes and the authority they confer cannot be accepted. And if, upon the allegations of his petition and the other facts of which the court was entitled to take notice, the petitioner had made out *prima facie* a case for relief, the court's failure to issue the

---

3 It is recognized, of course, that the right of appeal is statutory. *Cf.* Cobbledick v. United States, 1940, 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783; United States v. Sanges, 1892, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445. But that does not mean it can be granted or withheld upon a basis of unreasonable discrimination, as a fulcrum of poverty would be in respect to habeas corpus matters. Boykin v. Huff, 1941, 73 App. D.C. 378, 121 F.2d 865.

writ or a rule to show cause why it should not issue, and its disposition of the case without hearing, would have been highly prejudicial and erroneous.

But in my view the petition in this case was not sufficient to state a cause of action, this fact appeared incontrovertibly from its face and other facts of record, and the court's failure to issue the writ or a rule to show cause was neither erroneous nor an abuse of discretion, much less a denial of constitutional right. The petition, standing entirely alone and without reference to any other facts, might be regarded as sufficient to state a cause of action, notwithstanding its extreme generality and the absence of specific facts in its allegations. But the petition in this case did not stand alone, unaffected by other facts. From the court's own records, of which it was entitled to take judicial notice, the fact appeared that within less than four months prior to the filing of the present petition the petitioner had had a full hearing upon the question of his sanity in a habeas corpus proceeding, which was determined adversely to his contentions; and the petition in this case attacked the validity of the prior proceeding and determination in no manner whatever. The case is even stronger for it appeared, also from the court's records, that petitioner had been adjudicated insane within the previous nine months in proceedings from which no appeal was taken. The present petition merely alleges, apparently with reference to this proceeding, "Your relator states that he was not properly adjudicated," an allegation hardly sufficient to challenge the validity of the determination upon the most liberal construction in favor of the pleader. It thus appeared from incontrovertible facts of record that petitioner had had two determinations of his sanity within the preceding nine months and one within four months. These facts being indisputable, in my opinion, for reasons to be stated, there was neither abuse of discretion nor prejudicial error in the failure to issue the writ or a rule to show cause or, consequently, to allow a hearing.

Ordinarily, it is true, the question whether the writ or a rule to show cause must issue is determined, under Walker v. Johnston, *supra,* from the face of the petition, *i. e.,* by the criterion whether it sets forth a cause of action. If one is stated or the matter is uncertain upon the allegations made, Walker v. Johnston requires the writ or a rule to issue. But if none is set forth and this appears clearly, the case recognizes explicitly, as does the statute, that the writ need not issue and apparently it does not require the issuance of a rule to show cause. The opinion also expressly recognizes that incontrovertible facts of record may be, in fact should be, considered in determining whether cause for granting the writ exists. All these things appear from the following excerpt taken from the opinion:

"It will be observed that if, upon the face of the petition, it appears that the party is not entitled to the writ, the court may refuse to issue it. *Since the allegations of such petitions are often inconclusive,* the practice has grown up of issuing an order to show cause, which the respondent may answer. By this procedure the facts on which the opposing parties rely may be exhibited, and the court may find that no issue of fact is involved. *In this way useless grant of the writ with consequent production of the prisoner and of witnesses may be avoided where* from undisputed facts or *from incontrovertible facts, such as those recited in a court record,* it appears, as a matter of law, no cause for granting the writ exists. On the other hand, on the facts admitted, it may appear that, as matter of law, the prisoner is entitled to the writ and to a discharge. This practice has long been followed by this court and by the lower courts. It is a convenient one, deprives the petitioner of no substantial right, if the petition and traverse are treated, as we think they should be, as together constituting the application for the writ, and the return to the rule as setting up the facts thought to warrant its denial, and if issues of fact emerging from the pleadings are tried as required by the statute." 312 U.S. 284, 61 S.Ct. 578, 85 L.Ed. 830. (Italics supplied)

Although the statement is not altogether clear in some respects, in two at least it leaves no room for doubt. One is that in considering whether cause for granting the writ exists, the court may take into account "incontrovertible facts, such as those recited in a court record." That language exactly fits the present situation. Another is that "if, upon the face of the petition, it appears that the party is not entitled to the writ, the court may refuse to issue it." Taking these two things together, it seems clear that if from the face of the petition and incontrovertible facts of record, of which the court is entitled to take judicial

notice, it appears "that the party is not entitled to the writ," the court "may refuse to issue it" and, by the same token, the rule to show cause. In this case the "incontrovertible fact of record" was that petitioner had received an adverse determination of his sanity within four months of the filing of this petition, in habeas corpus proceedings from which no appeal was taken and which are attacked in no way for invalidity, want of jurisdiction or violation of constitutional right. In short, the court's records disclose a conclusive determination less than four months prior to institution of this proceeding that petitioner is not of sound mind. That being true, in my judgment it was not an abuse of discretion for the court to find, on that fact alone, that petitioner was not entitled to relief. This implies of course that the issue of time elapsed since the previous hearing was the controlling one, that the court had power to determine it, and did so correctly. The crucial issue therefore, in my opinion, is the effect of the prior adjudication for the period of time which elapsed between the two proceedings.

It is true, as has been said, that *res judicata* does not apply to habeas corpus. That is a relaxation of normally prevailing law made for the broader protection of individual liberty. But the relaxation does not mean that the adjudication of insanity, whether by sanity proceedings or by habeas corpus for release, has no conclusive effect whatever.[4] *Res judicata,* when it is applicable, means that the matter once finally adjudicated is determined, for the parties to the suit, for all time. That an effect so conclusive is withheld from habeas corpus determinations does not mean they have no effect whatever and conclude nothing for any interval of time, however short. The relaxation and the purpose behind it do not require going from one extreme to the other. Nor in my opinion does anything in the Constitution, statutes or decisions relating to the matter. Surely an adjudicated insane person has no constitutional or other right to have his sanity or the recovery thereof adjudicated and readjudicated weekly, monthly or at whatever other intervals he may choose, merely because in some, though rare, instances sanity may be re-

covered over night and he has the tenacity to file petitions with unrestrained regularity alleging this has occurred in his case. Such a view would give the determination no conclusive effect whatever and, once accepted, would result in flooding of the courts with vexatious petitions and useless hearings.

Unless therefore the adjudication is to be given no conclusive effect for any period of time, it must be held effective for some period to prevent reexamination of the issue. In other words, as was stated at the outset, there must be some limit to the number and frequency of hearings a petitioner may have upon the same issues, even in habeas corpus. The important question is how that limit is to be ascertained.

As has been stated, no statute purports to prescribe it. Considering the difficulty of fixing the limit otherwise and the importance of the matter, the question is one preeminently for legislative settlement, having due regard of course to the function of habeas corpus as a constitutional right and as an institution safeguarding other such rights. In view of its character in these respects, there are obvious limitations of the scope to which legislation undertaking to regulate the exercise of the right may go. But that it is not beyond reasonable regulation is shown by the provisions of the habeas corpus statute above referred to, their general acceptance by the courts, and particularly by the language of Walker v. Johnston quoted above. Unfortunately, however, there is no statute which purports expressly to regulate the matter generally, and in the absence of one the limit, if any, must be fixed, as in other such situations, by judicial action.

Generally when some limitation upon conduct or rights is required and no statute prescribes one, the courts may impose reasonable restrictions. It would seem therefore that in situations like the present the length of time which must elapse before another hearing can be demanded as of right would be a matter primarily for the trial court's discretion in the first place, subject to review for abuse in its exercise.[5] There is no other apparent al-

---

4 *Cf.* authorities cited in note 1 *supra.*

5 *Ibid.* "The federal statute * * * does not lay down any specific rule on the subject, but directs the court 'to dispose of the party as law and justice require.'"

A study of the cases will show that this has been construed as meaning that each application is to be disposed of *in the exercise of a sound judicial discretion* guided and controlled by a consideration

ternative to giving the petitioner a right to a hearing whenever and however often he may demand it. As between these two views, the former is clearly preferable for considerations not merely of convenience, but of necessity in getting done the work of the courts and others affected. Other litigants and officials have business which also requires judicial attention. Further, in my view the former alternative affords a constitutionally adequate protection for the petitioner's individual rights.

When the present petition was presented, therefore, it became the trial court's duty to examine it with a view to determining whether it disclosed a sufficient basis for issuing the writ or a rule to show cause. In doing this the court was entitled to consider not only the allegations of the petition, but the facts disclosed by its own records that an identical petition had been filed less than four months previously, pursuant to which hearing had been had on the merits and decision adverse to the petitioner had been rendered. Upon ascertaining these facts it was within the court's power and province to exercise its discretion upon the question whether a sufficient period had elapsed to entitle petitioner as a matter of right to another hearing upon the same question.

This the court did and, in my opinion, without any basis for a finding here that it abused its discretion. The findings of

fact recite the institution of the criminal proceedings, petitioner's conviction and sentence, his adjudication as an insane person in February, 1940, the subsequent adjudication in the July habeas corpus proceedings that he had not recovered sanity, and the institution of this proceeding in October following, on the day after the criminal sentence expired. All these facts appeared of record. No evidence or argument could overcome their effect. From the face of the petition it was apparent the same issue was being raised again and only that issue. There was no attack upon the validity of the July proceedings and no sufficient basis for challenge to the February adjudication. The petition set forth no special facts to show that recovery had taken place during the less-than-four-month interval, in fact did not allege on its face even in general terms that recovery had occurred during that time. There was the mere vague general statement that petitioner "is sane" and the charge that he was held in confinement illegally, presumably for that reason.[6] But if the petition is taken most liberally in the pleader's favor as alleging recovery within the four-month interval, still the question arising on the face of the petition and the facts of record was whether petitioner was entitled as of right to another determination of his sanity so soon.

In my judgment it was not an abuse of the court's discretion to deny him the right

of whatever has a rational bearing on the propriety of the discharge sought. Among the matters which may be considered, *and even given controlling weight, are * * * (b) a prior refusal to discharge on a like application."* Salinger v. Loisel, 1924, 265 U.S. 224, 231, 44 S.Ct. 519, 521, 68 L.Ed. 989, citing authorities, including Ex parte Cuddy, C.C. 1889, 40 F. 62, 66, per Field, J: "* * * in some instances that fact [prior adjudication] may justify a refusal of the second." [Italics supplied.]

In Wong Doo v. United States, 1924, 265 U.S. 239, 240, 44 S.Ct. 524, 525, 68 L.Ed. 999, the Court said: "In Salinger v. Loisel * * * we held that in the federal courts the doctrine of *res judicata* does not apply to a refusal to discharge a prisoner on *habeas corpus* but that in those courts, where the prisoner presents a second petition, the weight to be given to the prior refusal is to be determined according to a sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the subject. It there-

fore must be held that in this case the courts below erred in applying the inflexible doctrine of *res judicata*. But it does not follow that the judgment should be reversed; for it plainly appears that the situation was one where, *according to a sound judicial discretion, controlling weight must have been given to the prior refusal."* [Italics supplied.]

Though *res judicata* does not apply, possibly the doctrine of estoppel could be regarded as doing so, though in habeas corpus with less conclusive effect than in other matters. *Cf.* Cromwell v. County of Sac, 1876, 94 U.S. 351, 24 L.Ed. 195, noted in Miller, *A Study in Res Judicata* (1938) 11 Rocky Mt. L.Rev. 159, 163.

6 Though perhaps the failure of the petition to set forth specific and concrete facts to show that recovery had taken place since the last adjudication would not prevent it from stating a cause of action, the absence of such allegations would seem properly to be a factor the court was entitled to take into account in exercising its discretion.

to three such determinations or hearings within less than nine months, nor was this a violation of constitutional right. A solemn adjudication of insanity, not appealed from nor challenged in any sufficient manner, followed within about five months by a readjudication of the same question by habeas corpus, was in itself and without reference to any other fact a sufficient basis for the court's action. Such an adjudication should hold for a period as short as four months, and perhaps a longer one, in the absence of any challenge to its validity and especially in view of the fact it was the second determination of the issue of sanity within less than one year.

It is true this view might result in the detention of a person whose sanity is restored for some comparatively short period of time. But that is hardly likely to happen in view of the crowded conditions of institutions for the mentally incompetent and the well-known fact that their officials, generally speaking, are anxious to release patients at the first safe opportunity. It is equally well known also that when insanity has progressed to the point that adjudication is had, and especially when readjudication follows this, the case is very rare in which recovery will be sudden and complete. Generally the process is gradual and slow rather than the contrary. If, however, these facts are not a sufficient answer, it must be found in the necessity that courts, officials charged with the care and treatment of the insane, and others affected be not harassed with endless and useless petitions and hearings at unlimited intervals, to the disruption of other equally important work and of consistent treatment of the patients themselves, upon the chance that rarely some person will remain under care and restraint for a slightly longer period than that of his actual incompetence. That period cannot be great in any event, since the limits of the court's discretion as to the time during which the previous adjudication can be held conclusive must be narrowly confined.

Those limits cannot be exactly fixed in the absence of statute determining them. I cannot believe however that such a statute prescribing a conclusive period of six months, or perhaps an even longer time, would be invalid. If not, I do not see how the court's decision that a similar, or as here a shorter, period must elapse before another determination can be had would be erroneous or in abuse of its discretion.

In my view, therefore, the court acted fully within its authority and not in violation of petitioner's rights when it examined the petition, taking account also of the incontrovertible facts of record concerning the prior adjudications, and determined that petitioner was not entitled to another hearing so soon. That procedure seems to me to have been in exact accordance, in these circumstances, with the provisions of the habeas corpus statute. It was consistent also with the *forma pauperis* statute. While in my opinion Section 832 is not controlling and the decision should be rested squarely on the habeas corpus statute, and its validity in these circumstances, Section 832 by its terms lends support to this conclusion on these facts. In so far as it confides to the trial court's discretion, in the first instance, the questions of merit and good faith, as these may affect the filing of the petition and the granting of a hearing, it is consistent with the views herein expressed concerning the effect of the habeas corpus act. Considering, as I do that the court's exercise of discretion under both statutes is reviewable, as stated above; that *res judicata* in its generally accepted sense has no application to habeas corpus, and therefore the period of conclusive effect of such proceedings upon issues like that of recovery of sanity cannot be long in any event; and consequently that petitioners will be able to secure hearings at relatively short intervals, varying somewhat perhaps with the circumstances of each case, I cannot see that either statute, or both together, as they have been applied in this case upon its facts, violate any constitutional or other right of the petitioner.

Finally, it is said that the court acted illegally in considering the contents of respondent's letter which transmitted the petition to the court. There are several answers. One is that the letter itself may be taken as an informal return, consonant with the informal petition which was filed. Under Walker v. Johnston the practice of filing return to the rule to show cause has received approval. If, however, the absence of the rule be taken to deprive the letter of the character of a return, the conclusive answer, in my opinion, is that in these circumstances neither issuance of a rule nor return was necessary. From indisputable facts of record and the face of the petition, without more, the court was enabled to conclude as a matter of law that the petitioner was not entitled to is-

suance of the writ, for the single reason that sufficient time had not elapsed after the previous determination to entitle him as of right to another hearing. That alone was sufficient basis for the court's action. If it also took account of other matters, not relevant to this issue, the error, if any, was harmless.

In my opinion, therefore, the judgment should be affirmed. It hardly need be added that in view of the time which has elapsed since the last adjudication of the petitioner's sanity, if he now feels that he has been restored to mental health and can prove this fact, he is entitled to file an-other petition to call the court's power and discretion into play. Thus it will make little difference in practical effect for the determination of petitioner's right to be released from custody whether the judgment in this case is reversed and petitioner has his hearing in this cause or, on the other hand, it is affirmed and he secures his hearing in a new proceeding. But the difference between the majority and myself concerning the disposition of this case is an important one for other cases which will follow. It is for that reason I am forced to dissent from the conclusions of my brethren.